UNITED STATES of America, Appellee,

v.

Kingsley FELIX, Appellant.

No. 92–3169.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 16, 1993.

Decided June 7, 1993.

Frank Schulte, Legal Intern, Minneapolis, MN, argued (Virginia G. Villa, on brief), for appellant.

Douglas R. Peterson, Asst. U.S. Atty., Minneapolis, MN, argued, for appellee.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Kingsley Felix appeals the district court's[1] decision to revoke his supervised release. We affirm.

## I.

In 1989, Felix was arrested for his involvement in a bank fraud scheme. Eventually he pled guilty in United States District Court for the District of Minnesota to use of a false social security number. *See* 42 U.S.C. § 408(g)(2) (1988). The district court sentenced Felix to serve a one-year term of imprisonment followed by a three-year term of supervised release. Felix completed his term of imprisonment in August 1989 and was immediately turned over to authorities in Norfolk, Virginia, where he appeared before and was convicted in a Virginia state court on pending state bank fraud charges. The Commonwealth of Virginia turned Felix over to the custody of the Immigration and Naturalization Service (INS), and the INS deported Felix to Nigeria on July 3, 1990.

Despite the deportation order, Felix returned to the United States. His exact date of return is unclear, but we know that he must have arrived in the United States after July 3, 1990, the date of his deportation, and before October 31, 1991, when he was arrested in Florida. In February 1992, Felix pled guilty in Florida federal district court to two counts of bank fraud. The Florida district court sentenced Felix to a 20–month term of imprisonment and a five-year term of supervised release.

In July 1992, Felix was ordered to return to Minnesota to appear before the Minnesota district court that had sentenced him on the

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

social security fraud conviction. At this hearing, the district court found that Felix had violated the condition of his supervised release that he not commit another federal, state, or local crime. As a result, the district court revoked Felix's supervised release and imposed an 18–month term of imprisonment to be served consecutively to the prison term imposed by the federal district court in Florida. On appeal, Felix asserts that he did not receive notice of the conditions of his supervised release and therefore that the district court lacked the authority to revoke his supervised release on the basis that Felix had violated one of the conditions.

## II.

A district court may, and in most cases is required by the Sentencing Guidelines to, impose a term of supervised release to be served after imprisonment as a part of a federal defendant's sentence. 18 U.S.C. § 3583(a); U.S.S.G. § 5D1.1. If a court does impose a term of supervised release, "[t]he court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision." 18 U.S.C. § 3853(d); *see also* U.S.S.G. § 5D1.3(a). The district court included this condition as a requirement of Felix's term of supervised release. *See* Judgment Including Sentence Under the Sentencing Reform Act ("Judgment") at 3–4, *United States v. Felix*, No. 4–88–113(01) (D.Minn. Mar. 2, 1989).

When imposing a term of supervised release, the district court must comply with 18 U.S.C. § 3583(f), which reads as follows:

> The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

18 U.S.C. § 3583(f). Felix argues that because the district court failed to carry out this directive, the court was therefore powerless to revoke his term of supervised release when Felix violated the condition that he not commit another crime during his term of supervision.

■ The purpose behind the requirement that the court order a written statement of the conditions of supervised release be furnished to the defendant is to provide "a guide for the defendant's conduct and for such supervision as is required." 18 U.S.C. § 3583(f). Because the ultimate goal is notice and guidance for the defendant, we decline to impose a rule that failure to order or to provide a written statement automatically results in the inability of the sentencing court to revoke supervised release based on a violation of one of the conditions. *See United States v. Ramos–Santiago*, 925 F.2d 15 (1st Cir.) (despite failure to order written statement of conditions of supervised release, the "essentials" of the notice requirement were met by attaching the conditions of supervised release to the copies of the sentence sent to both defendant and defense counsel), *cert. denied*, —— U.S. ——, 112 S.Ct. 129, 116 L.Ed.2d 96 (1991); *United States v. Johnson*, 763 F.Supp. 900 (W.D.Tex.1991) ("[d]espite the lack of any evidence that [defendant] received a written copy of the terms of his supervised release," defendant understood he was not to commit any federal, state, or local crime and as a result his supervised release was properly revoked). The question before this court, therefore, is whether Felix received adequate actual notice that, as a condition of his supervised release, he must not "commit another Federal, State, or local crime."

■ The parties agree that the district court failed to order the probation officer to provide Felix with a written statement of conditions to which his term of supervised release would be subject. The district court did not read the conditions of the supervised release verbatim to Felix at the sentencing hearing, and the record does not indicate that Felix received a copy of the judgment and sentence, which set forth the exact terms of his supervised release. *See* Judgment at 3 ("While on supervised release the defendant shall not commit another Federal, state, or local crime, and shall comply with the standard conditions that have been adopted by this court (set forth on the following page).");

Standard Conditions of Supervision, Judgment at 4 ("While the defendant is on probation or supervised release pursuant to this Judgment: 1) The defendant shall not commit another federal, state or local crime."). Presumably because Felix was in the custody of the INS and was so quickly deported after the Virginia state court conviction and never returned to Minnesota for supervision, the federal probation officer also did not conduct an in-person interview and thus was unable to discuss with Felix the conditions under which he was expected to live for the next three years. The only actual notice we can be sure Felix received of the conditions, therefore, was what the district court said to him at the sentencing hearing when imposing sentence.

At the sentencing hearing, the district court told Felix that he was to serve a 12–month term of imprisonment to be followed by a three-year term of supervised release. The court further explained that supervised release was "like probation," and admonished Felix as follows: "I will tell you, sir, that you had better not mess up on my probation. And it would be a very bad idea for you to do so." Sentencing transcript at 16. At the end of the sentencing hearing, Mr. Felix stated to the court "I promise—I promise I'll do my very best to stay clean, sir. Thank you." *Id.* at 17. The court responded: "Good luck to you. You behave yourself." *Id.* Mr. Felix acknowledged the court's statements with "Thank you, sir." *Id.* This dialogue indicates that the district court provided Felix with oral notice that the court expected him to remain law-abiding during his term of supervised release.

There can be no doubt that Felix understood the district court's warnings, as evidenced by the following interchange, which took place at the revocation hearing:

Felix: In 1988 when I came before you, I made an honest and an earnest promise to you that I was going to commit no crime no more. You told me that when I get out I should go see—go to federal courthouse and see a probation officer on the supervised release. I was very willing to abide by what I said I was going to do.

Court: You knew that stealing money was a wrong thing to do?

Felix: I knew, sir—

Court: You knew that.

Felix: I knew that.

Revocation hearing transcript at 13–14. At this point, Felix explained why he committed the Florida bank frauds. He said that when he was deported to Nigeria, he had no money and owned nothing. While in Nigeria, friends gathered together enough money for him to return to the United States, where his daughter was still living. When he realized he could not support himself financially in the States, he decided to return to Nigeria. He said, "I made up my mind I was going to go back to Nigeria and live, but what I did, trying to take some money to go back home. That's what I did. I know I'm wrong in that aspect, but I was trying to leave the country permanently." *Id.* at 15. The court acknowledged Felix's explanation and Felix responded by saying "I'm sorry if I failed in my promise." *Id.*

After a thorough review of the record, we conclude that the district court did give adequate notice to Felix that he was not to violate the law while on supervised release and that Felix understood it. The court specifically told Mr. Felix that he was not to "mess up" and Mr. Felix stated that he would try to "stay clean." At the revocation hearing, Felix told the court that he knew he had promised the court at his sentencing that he would not commit any more crimes but then explained why he committed the Florida bank frauds. Accordingly, we hold that with respect to the specific requirement that Felix violate no laws while on supervised release the district court provided Felix with notice sufficient "to serve as a guide for the defendant's conduct." *Cf. Hulstine v. Morris,* 819 F.2d 861, 864 (8th Cir.1987) ("Due process requirements may be satisfied if a defendant receives *actual notice* of the charges against him even though the indictment or information is deficient.") (citation omitted), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988). Felix knew when he left Judge Rosenbaum's courtroom in 1989 that a condition of his supervised release was that

he was to commit no more crimes. No more actual notice than that is required.

The remarkable similarity between the crimes Felix committed in Minnesota and Florida provides additional support for the finding that Felix understood that using false information to open bank accounts in Florida was illegal and that by participating in such schemes he would "mess up" his supervised release. In Minnesota, Felix used fictitious names and social security numbers to open new bank accounts. He then deposited closed-account checks in the new accounts and attempted to withdraw as much of the deposit as possible as quickly as he could before moving on to another town. In Florida, Felix used false social security numbers, fictitious names, and false drivers licenses in order to open new bank accounts. Just as he had in Minnesota, Felix then used the accounts to obtain substantial amounts of cash from the banks.[2]

We emphasize to the district courts the importance of informing defendants of the specific conditions imposed as terms of their supervised release. The district court has the responsibility of notifying defendants what is expected of them during the time period that they remain under the supervision of the court after their release from prison. We also remind probation officers of their responsibility to see that the defendant is properly signed up following the sentencing hearing and receives a copy of the terms of the supervised release. *See* Memorandum of Understanding between the Federal Bureau of Prisons and the Administrative Office of the U.S. Courts, March 13, 1992. Finally, we commend the practice in some districts of making sure that the defendant himself is personally served with a copy of the court's written judgment and sentence and a proper return thereof made in the court file. While lack of a detailed explanation may not prove fatal when the condition at issue is as basic and straightforward as it is in this case, many conditions will likely require a more specific admonition to insure that a defendant understands the particular restrictions

imposed on his behavior during a term of supervised release.

### III.

We hold that Felix received adequate notice of the condition of his supervised release that he not commit any federal, state, or local crime. Accordingly, we affirm the judgment of the district court revoking Felix's supervised release and imposing an additional term of imprisonment.

---

2. The district court also granted Felix a two-point reduction for acceptance of responsibility, indicating that Felix recognized that he had engaged in wrongful criminal activity. *See* U.S.S.G. § 3E1.1, comment. (n. 1).