**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Favio ORTEGA–BRITO, Defendant–Appellant.**

**No. 02–50114.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 8, 2002.

Filed Nov. 26, 2002.

---

Michelle Anderson, Federal Defenders of San Diego, San Diego, CA, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney (when brief was filed), Carol C. Lam, United States Attorney (when opinion was filed), Lupe C. Rodriguez, Jr. (on brief), Kyle W. Hoffman (argued), Assistant U.S. Attorneys, U.S. Attorney's Office, San Diego, CA, for the plaintiff-appellee.

Before: BRIGHT,\* GOODWIN, and TASHIMA, Circuit Judges.

GOODWIN, Circuit Judge.

Favio Ortega–Brito ("Ortega") appeals from the district court's judgment imposing a prison term following the revocation of his supervised release based on a violation of the conditions of his release. Ortega contends that his term of supervised release should not have been revoked. First, he asserts that at the time his term of supervised release was imposed, the district court did not order Ortega's probation officer to provide him with a written copy of the conditions of his release. This omission was a violation of 18 U.S.C. § 3583(f). Second, he asserts that the pro-

bation officer did not provide him with a written copy of the conditions in violation of 18 U.S.C. § 3603(1).[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 13, 2001, Ortega pled guilty to a charge of illegal reentry following deportation in violation of 8 U.S.C. § 1326. At his sentencing hearing, the district court sentenced Ortega to 60 days (time served) and a one-year term of supervised release. The district court also orally informed Ortega of certain conditions of his release. Three days later, Ortega was deported to Mexico.

On October 20, 2001, Ortega was arrested again for violation of 8 U.S.C. § 1326. Based on this arrest, the district court issued an order to show cause why Ortega's term of supervised release should not be revoked. On December 4, 2001, Ortega entered into a plea agreement whereby he pled guilty to a charge of making false statements to a federal officer in violation of 18 U.S.C. § 1001 in exchange for not being charged with the crime of illegal reentry. In the plea agreement, Ortega admitted that he was in violation of the conditions of his supervised release and stipulated that any sentence imposed for the violation of his release run consecutive to the sentence imposed for the conviction of making false statements.

During his revocation hearing held on February 25, 2002, Ortega moved to dismiss the order to show cause, arguing, inter alia, that he never received a written copy of the conditions of his supervised release. No evidence was presented by the parties to show compliance or noncompliance with the relevant statutes. The district court found that Ortega received oral notice of the relevant conditions. Observing that there was no basis in law for

---

\* The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

**1.** Ortega also argues on appeal that the government did not meet its burden of proof to

show that he violated a condition of his supervised release. Because this issue was not preserved, we do not consider it here.

the proposition that noncompliance with 18 U.S.C. §§ 3583(f) or 3603(1) requires dismissal of revocation proceedings, the district court revoked Ortega's term of supervised release.

### DISCUSSION

We begin our discussion with the statutes at issue. 18 U.S.C. § 3583(f) provides as follows:

> The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

18 U.S.C. § 3603(1) requires a probation officer to "instruct a probationer or a person on supervised release, who is under his supervision, as to the conditions specified by the sentencing court, and provide him with a written statement clearly setting forth all such conditions." Although the statutes detail the obligations of the district court and the probation officer, they are silent with respect to remedies for noncompliance.

■ Whether reinstatement of supervised release is an appropriate remedy for a violation of 18 U.S.C. §§ 3583(f) or 3603(1) is an issue of first impression in this circuit. Two other circuits, however, have confronted this issue and declined to adopt the per se rule urged by Ortega; instead, both the First and the Eighth Circuits looked to the "essentials of the notice required" to determine whether revocation was proper. *United States v. Ramos–Santiago*, 925 F.2d 15, 17 (1st Cir. 1991). For the reasons stated below, we agree with the First and Eighth Circuits and hold that, where a releasee received actual notice of the conditions of his supervised release, a failure to provide written notice of those conditions will not automat-

ically invalidate the revocation of his release based upon a violation of such conditions.

The circumstances of this case bears a striking resemblance to *United States v. Felix*, 994 F.2d 550 (8th Cir.1993), where a releasee challenged the authority of the district court to revoke his supervised release on the ground that he did not receive written notice of the conditions of his release. The Eighth Circuit affirmed the decision of the district court, finding that Felix received adequate oral notice at his sentencing hearing. The *Felix* court emphasized the fact that the district court engaged in a colloquy with Felix, during which it explained that supervised release was "like probation" and violating the conditions of his release "would be a very bad idea." *Id.* at 552. Because "the ultimate goal [of 18 U.S.C. § 3583(f) ] is notice and guidance for the defendant," the Eighth Circuit concluded that the purpose of the statute was satisfied by the actual notice given during the sentencing hearing. *Id.* at 551–52.

We find the Eighth Circuit's reasoning in *Felix* persuasive. Therefore, we must determine whether Ortega received actual notice of the conditions, the violations of which formed the basis for the revocation of his supervised release.

■ The exchange between Ortega and Judge Thompson at the sentencing hearing was virtually identical to that described in *Felix*. Judge Thompson explained supervised release as follows:

> The Court: It's like a parole. If you do something wrong, you go back to jail. Do you understand?
>
> Defendant Ortega: Yes.

Later, just before the pronouncement of the sentence, the following dialogue took place:

The Court: All right. Do you have anything you would like to say, Mr. Ortega, before I pronounce sentence? Defendant Ortega: I will not do this again. If you can just give me a chance to be with my family.

\* \*. \* \* \* \*

The Court: [I]t is the judgment and sentence of the court that Mr. Ortega be sentenced to the Bureau of Prisons for a period of 60 days. There is a one-year supervised release attached to this sentence. The usual terms and conditions will apply, together with the special terms and conditions: ... that under no circumstances is he ever again, as long as he lives, to reenter or attempt to reenter the United States without being properly and legally documented to do so and having legal permission from the United States government to do so.

On this record, there is no question that Ortega received actual notice that his release was conditioned upon compliance with at least two restrictions: he may not (1) commit any crimes, and (2) reenter the United States without proper documentation. The actual notice given to Ortega during the sentencing hearing satisfied the purpose of 18 U.S.C. §§ 3583(f) and 3603(1).

Our holding finds additional support in Ortega's plea agreement, in which Ortega acknowledges that he is in violation of the conditions of his release. That agreement plainly reveals that in return for pleading guilty to making false statements, Ortega avoided prosecution for illegal reentry. Either of these charges could have been the basis for revocation of his release.

In light of the facts of this case, as well as existing case law, to vacate the district court's revocation order because of what are at most technical violations would be to elevate form over substance. We decline to so do.

Although we affirm the judgment of the district court in this particular case, we feel compelled to emphasize the importance of compliance with 18 U.S.C. §§ 3583(f) and 3603(1). As we have observed above, the obligations of the district courts and probation officers under those statutes are specific, and we encourage the establishment of procedures that would ensure compliance with the letter, as well as the purpose, of the statutes.

AFFIRMED.